**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOVAN CAMPBELL,

Plaintiff, Case No. 26-cv-6514

- against -

**COMPLAINT**

MSC DEVELOPMENT, INC.
d/b/a Brighter Image Lab,

Defendant.
---------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Jovan Campbell ("Plaintiff" or "Campbell"), brings this action on behalf of herself against MSC Development, Inc. d/b/a Brighter Image Lab (hereinafter "MSC" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against MSC for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services MSC provides to their non-disabled customers through www.BrighterImageLab.com (hereinafter "BrighterImageLab.com" or "the website"). Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. BrighterImageLab.com provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs offered by MSC. Yet, BrighterImageLab.com contains thousands of access barriers that make it difficult if not impossible for blind customers to use the website. In fact, the access barriers make it impossible for blind users to even complete a transaction on the website. Thus, MSC excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with defendant's website and from purchasing goods or services from defendant's website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface. MSC's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on BrighterImageLab.com.

8. By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York State law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to make an online purchase of the 'PressOn Veneers' on BrighterImageLab.com. However, unless Defendant remedies the numerous access barriers on its website, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction on BrighterImageLab.com.

11. Because Defendant's website, BrighterImageLab.com, is not equally accessible to blind consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in MSC's policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because Plaintiff is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

13. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

14. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District. Defendant purposefully targets and otherwise solicits business from New York State residents through its website and sells its products through many retailers in this District. Because of this targeting, it is not unusual for MSC to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the Website. In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D.

Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods*., 280 F.Supp.3d at 294. This satisfies Due Process because the harm – the barred access to the website – occurred here." *Otter Prods*., 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

**PARTIES**

16. Plaintiff, is and has been at all relevant times a resident of Queens County, State of New York.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff, Jovan Campbell, cannot use a computer without the assistance of screen reader software. Plaintiff has been denied the full enjoyment of the facilities, goods and services of BrighterImageLab.com as a result of accessibility barriers on BrighterImageLab.com.

18. Defendant, MSC Development, Inc., is a Texas foreign business corporation doing business in New York State with a principal place of business located at 2433 South University Drive, Fort Worth, TX 76109.

19. MSC provides to the public a website known as BrighterImageLab.com which provides consumers with access to an array of goods and services, including, the ability to view the wide range of veneers and other smile-related products which can be purchased with the click of a mouse, and learn about promotions, among other features. Consumers across the United States use Defendant's website to purchase Defendant's products and accessories. Defendant sells its products and many partner retailers. Defendant maintains dominion and control over how its products are sold at its partner retailers. Defendant also maintains a physical brick-and-mortar store location where consumers can be fitted for and purchase its products. Defendant's website serves as a nexus to its physical store location. Defendant's website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Victor Andrews v. Blick Art Materials, LLC*, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017).

**NATURE OF THE CASE**

20. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

21. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

22. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

23. Blind users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS," and Nonvisual Desktop Access, otherwise known as "NVDA," (jointly hereinafter as "screen readers") are currently the most popular, separately purchased and downloaded screen-reading software programs available for blind computer users.

24. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.1 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers. Websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

25. Defendant controls and operates BrighterImageLab.com. in New York State and throughout the United States.

26. BrighterImageLab.com is a commercial website that offers products and services for online sale. The online store allows the user to view the wide range of veneers and other smile-related products and accessories offered for sale, make purchases, and perform a variety of other functions.

27. Among the features offered by BrighterImageLab.com are the following:

(a) Consumers may use the website to connect with Brighter Image Lab on social media, using such sites as Facebook, Twitter, Instagram, and Pinterest;

(b) an online store, allowing customers to purchase veneers and other smile-related products and accessories for delivery to their doorstep; and

(c) learning about the products and the company, reading reviews, learning about shipping and return policies, learning about Defendant's non-for-profit causes, and learning about promotions.

28. This case arises out of MSC's policy and practice of denying the blind access to the goods and services offered by BrighterImageLab.com. Due to MSC's failure and refusal to remove access barriers to BrighterImageLab.com, blind individuals have been and are being denied equal access to MSC, as well as to the numerous goods, services and benefits offered to the public through BrighterImageLab.com.

29. MSC denies the blind access to goods, services and information made available through BrighterImageLab.com by preventing them from freely navigating BrighterImageLab.com.

30. BrighterImageLab.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

31. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on BrighterImageLab.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind BrighterImageLab.com customers are unable to determine what is on the website, browse the website or investigate and/or make purchases.

32. BrighterImageLab.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as BrighterImageLab.com, these forms include search fields to locate products, fields to select method of payment, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information with confidence and security.

33. On BrighterImageLab.com, Plaintiff is not able to complete a transaction. Specifically, Plaintiff, using her screen reader, experienced the following problems when attempting to make a purchase on the Website:

**PROMOTIONAL POP-UP WINDOW:**

When Plaintiff landed on the website, a promotional pop-up appeared. The purpose of the pop-up window was **NOT** announced by the screen reader. The "$200 off first purchase" pop-up was announces **ONLY** as "POPUP Form dialog Close dialog button", and **NEITHER** the offer nor the form it contains was mentioned. Apart from the close button, **NOTHING** about the pop-up's contents was conveyed. Plaintiff could **NOT** tell what the pop-up offered or whether to interact with it. Consequently, Plaintiff and other blind visitors to the website cannot take advantage of "sighted only" promotions.

A live chat pop-up repeatedly appears while browsing and is **NOT** identified as a chat window. A "Live Chat" pop-up appears repeatedly while Plaintiff browsed the main website and the shop website, and each time it was announced as "button Minimize widget", with **NO** indication that a live chat window has opened. It keeps returning even after being dismissed again and again, interrupting Plaintiff each time. Plaintiff was **UNAWARE** the pop-up was a live chat and could **NOT** prevent it from reappearing. This is a critical error.

When the live chat pop-up is dismissed, focus **RETURNS** unexpectedly to the top of the page. Each time the "Live Chat" pop-up is dismissed, keyboard focus is sent back to the start of the webpage and **NOT** back to where Plaintiff was reading. Plaintiff was **FORCED** to reorient themselves and find their original reading location after every interruption. Because the pop-up keeps reappearing, this reset happens repeatedly during a single visit, wherever Plaintiff browses.

**NAVIGATION:**

There is **NO** functional "Skip to Content" link. The header and navigation content repeated on every page **CANNOT** be bypassed, **FORCING** Plaintiff through the same blocks each time a new page loads before the main content can be reached. Consequently, accessing individual products was virtually impossible and at best, significantly time-consuming and burdensome.

Several interactive controls on the homepage can **ONLY** be operated with a mouse. Several controls on the homepage work **ONLY** with a mouse and are **SKIPPED** by keyboard focus entirely. They include the "Your Smile Journey Begins Here" control, which opens a form for exclusive offers and a chance to win a free smile makeover, the "Single Arch" and "Double Arch" options on each product card in the "Three Dental

Veneer Tiers to Choose From:" section, and the "Processing", "Warranty" and "Glazing" options in the "Upgrade Your Purchase With Extra Value" section. Plaintiff was **PREVENTED** from reaching the offer form or choosing any product option from the homepage.

Navigation links and their submenus are **NOT** accessible with the keyboard. The "Account", "Information" and "Dental Veneers" navigation links reveal submenus on mouse hover, but the links themselves receive **NO** keyboard focus and **CANNOT** be operated with the keyboard, so **NONE** of the links inside their submenus can be reached either. The navigation menu could **NOT** be used. This is a critical error which prevented Plaintiff from accessing the products, services, and information offered on the website.

There are **NO** controls to pause or stop moving content. The homepage banner video plays **AUTOMATICALLY** and the announcement region changes slides continuously, and **NEITHER** can be stopped or paused.

One or more navigation/graphic links are **NOT** labeled meaningfully. Links in the homepage main content are announced as meaningless strings, such as a link beginning "afba905e-d2d3-4ef0-88f3-07a7c1" and another read as "c-r-a-p link", **WITHOUT** any indication of their purpose or destination. Images present text such as "Smile Now, Pay later.", "100% Approval low $32 Payments, No Interest" and "Apply Now for Financing", along with other pricing and product details, and **NONE** of it has an accessible equivalent. The logos in the "As Featured On" section have **NO** alternative text and are **NEVER** announced. The homepage content was largely unavailable to Plaintiff, making the page impossible to navigate.

The shop website's navigation menu does **NOT** identify its role or explain how to operate it. On the shop website, reached from "Buy Now" on the homepage, the navigation links, such as "Home", "Veneer Systems" and "Teeth Whitening Products", receive focus together and are announced **ONLY** as "Home 1 of 6", which identifies **NEITHER** a navigation menu nor the type of control. The menu can be moved through **ONLY** with the arrow keys, and **NO** instruction says so. Plaintiff had **NO** indication that "Home 1 of 6" was the navigation menu or that it was interactive, and was **UNABLE** to use the shop website's navigation.

Filter controls on collection pages are **NOT** in a logical focus order. On the "Veneer Systems" collection page of the shop website, the filter controls are reached **ONLY** after tabbing through every product card, although the filter section is displayed first, to the left of the products. The focus and reading order do **NOT** match the visual presentation of the page, which is **ILLOGICAL**, and Plaintiff was **FORCED** past every product to reach the filters.

**SIZE, COLOR, SUBSCRIPTION, AND QUANTITY:**

Images of text **CANNOT** be read with the screen reader. The gallery on product pages consists largely of images of text carrying product details, descriptions, pricing, comparisons with traditional cosmetic dentistry and other information, and **NO** accessible equivalent is provided for any of it. Most of these images are read **ONLY** as "PressOn Veneers™", and their content is **NOT** conveyed. The product information presented in the gallery was unavailable to Plaintiff.

The "Select Processing Speed" and "Select Warranty Option" options are **NOT** accessible. The processing speed and warranty options are announced as, for example, "*30+ Day | Standard Processing radio button checked required 1 of 3", and the adjacent "Select Processing Speed" and "Select Warranty Option" labels are **NOT** associated with them or announced. Plaintiff was given no context about what the options selected or why.

"Arch Selection" options **CANNOT** be reached with the keyboard. On the "PressOn Veneers" product page, the "Arch Selection" options "Upper", "Lower" and "Double" can be selected **ONLY** with a mouse; keyboard focus **NEVER** reaches them, and "Upper" stays selected by default, making it the **ONLY** arch that can be purchased from the keyboard. Plaintiff had no way to choose "Double" and could **NOT** purchase veneers for the top and bottom teeth together.

"Partial Payment" options **CANNOT** be selected with the keyboard. Under "Partial Payment", the "Full payment" and "Split payment" options are **SKIPPED** when tabbing through product pages, and **NEITHER** receives focus, so a mouse is required to change the selection. "Full payment" is selected by default and **CANNOT** be changed with the keyboard. Plaintiff was **UNABLE** to choose how to pay for the product.

**CHECKOUT PROCESS:**

The "Pay Now" tab control on the checkout page does **NOT** behave as announced. The "Pay Now" tab on the checkout page is announced as "Pay Now tab selected 1 of 2", but the arrow keys, which are how tabs are expected to work, have **NO** effect, and the tabs respond **ONLY** to the Tab key. The announcement was **MISLEADING**, and Plaintiff repeatedly tried the arrow keys before finding that the Tab key worked.

Error notifications are **NOT** announced as expected on the checkout page. Activating "Place Order" with an incorrect billing address field, including a blank zip code, appears to do nothing: **NO** error is announced, **NO** error message is displayed, and there is **NO** indication of whether the order was submitted. The incorrect field is **NOT** identified in any way, leaving Plaintiff no means of finding what needed to be corrected. Plaintiff could **NOT** determine what had happened or why the order was not placed, and was **UNABLE** to complete the purchase.

Payment method options on the checkout page are **NOT** accessible. Two Klarna

options and one Afterpay option among the payment methods are announced as "Pay over time radio button checked 4 of 9", "Pay in full today radio button checked 5 of 9" and "radio button checked 8 of 9", **WITHOUT** naming the payment provider. Plaintiff was **UNAWARE** that Klarna or Afterpay were available and was **PREVENTED** from choosing them, although they are visually displayed.

**CONTACT:**
An accessibility statement is available on the main website, but it is **NOT** linked from the shop website. The shop website, where products are purchased, provides **NO** link to the accessibility statement.

Consequently, Plaintiff was essentially prevented from completing a transaction on the Website.

34. Furthermore, BrighterImageLab.com lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on BrighterImageLab.com's menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a purchase, he was unable to access it completely.

35. Furthermore, Plaintiff is unable to locate the shopping cart because the shopping cart form does not specify the purpose of the cart. As a result, blind customers are denied access to the shopping cart. Consequently, Plaintiff was unsuccessful in adding products into her shopping cart and are essentially prevented from purchasing items on BrighterImageLab.com.

36. Moreover, the lack of navigation links on Defendant's website makes attempting to navigate through BrighterImageLab.com even more time consuming and confusing for Plaintiff and blind consumers.

37. BrighterImageLab.com requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, BrighterImageLab.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on BrighterImageLab.com.

38. Due to BrighterImageLab.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some blind customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if BrighterImageLab.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendant's website in an attempt to reach the desired service. Thus, BrighterImageLab.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on BrighterImageLab.com.

39. BrighterImageLab.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use BrighterImageLab.com and who would otherwise be able to fully and equally enjoy the benefits and services of BrighterImageLab.com in New York State and throughout the United States.

40. Plaintiff made numerous attempts to complete a purchase on BrighterImageLab.com, most recently on September 17, 2026; September 23, 2026; and October 1, 2026, but was unable to do so independently because of the many access barriers on Defendant's website. These access barriers have caused BrighterImageLab.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to make an online purchase of the 'PressOn Veneers' on Defendant's website. Moreover, if Defendant removes the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to inquire about and purchase new and additional veneers and smile-related products and accessories for delivery to her doorstep. Just because you are blind doesn't mean that you can't have good looking teeth. Plaintiff has always wanted whiter teeth but could not afford permanent veneers. Additionally, Plaintiff has struggled with the practical hardships that blind people often face in buying products generally. Traveling to physical stores and navigating aisles to buy whitening products has always been cumbersome and store staff are often unhelpful. Traveling to offices for professional whitening sessions and arriving for appointments on time is also highly burdensome and expensive for Plaintiff, as a blind person. As such, Plaintiff has been looking for a way to have a perfect smile without having to clear the hurdles that she faces because of her blindness. Like most blind people, Plaintiff relies on social media for product recommendations. While browsing through her social media, Plaintiff kept noticing advertisements for Defendant's brand. Plaintiff loved that she could send tooth impressions to Defendant's labs, instead of traveling to a physical location. Plaintiff also loved that Defendant's brand has been a trusted and reliable source for realistic veneers and smile-related products at a very reasonable price point and that Defendant's veneers are removable, which gives Plaintiff flexibility in how she wants to look. As such, Plaintiff was eager to make a purchase on Defendants' website. Plaintiff sought to

purchase directly from Defendants' website because it is the only way to access Defendant's own proprietary veneers and related products and gives her access to exclusive discounts, sales, and other bargains that are only available on Defendant's website. Unfortunately, Defendant's website was not accessible and continues to be inaccessible, thereby deterring Plaintiff from making purchases on the site. If the website were accessible to the blind and Plaintiff were not deterred from returning, she would be able to complete the purchases she originally intended to make and return regularly to the website to purchase and replenish her supply of the 'DIY Teeth Cleaning/Whitening Kit & Polisher Pack', which she plans to use as often as she can. Moreover, Plaintiff would like to return to explore the other products currently on Defendant's site and purchase Defendant's new offerings as they are released. Plaintiff is especially interested in returning to Defendant's website to purchase the 'Tooth Polisher'. Plaintiff has purchased similar products from other (accessible) online vendors in the past, but Defendant's expertise and craftmanship are unique and Defendant has a reputation for high quality and realism, which set it apart from competitors. Plaintiff intends to return to Defendant's website once it becomes accessible so that she can make future purchases and fully experience the variety of products Defendant offers. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortar locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc.*, 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc.*, 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether a website accessibility complaint properly allege whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how

often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during November and December, 2025 without success and will definitely make purchases of additional products, including the new products that are regularly added to the website, amongst many other products which are sold on the website and which currently cannot be purchased by blind persons.

41. As described above, Plaintiff has actual knowledge of the fact that Defendant's website, BrighterImageLab.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

42. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of BrighterImageLab.com.

43. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

44. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

45. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of BrighterImageLab.com, Plaintiff suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

**FIRST CAUSE OF ACTION**

(Violation of 42 U.S.C. §§ 12181 *et seq*. – Title III of the Americans with Disabilities Act)

46. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 of this Complaint as though set forth at length herein.

47. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

48. BrighterImageLab.com is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7).

49. Defendant is subject to Title III of the ADA because it owns and operates BrighterImageLab.com.

50. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

51. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful

discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

55. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of MSC who are blind have been denied full and equal access to BrighterImageLab.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

56. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

57. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of BrighterImageLab.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

58. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

58. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

60. Plaintiff is also entitled to reasonable attorneys' fees and costs.

61. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
(Violation of New York State Human Rights Law, N.Y. Exec. Law Article 15 (Executive Law § 292 *et seq*.))

62. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 61 of this Complaint as though set forth at length herein.

63. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.".

64. BrighterImageLab.com is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

65. Defendant is subject to the New York Human Rights Law because it owns and operates BrighterImageLab.com. Defendant is a person within the meaning of N.Y. Exec. Law. § 292(1).

66. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to BrighterImageLab.com, causing BrighterImageLab.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

67. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

68. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary

aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

69. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

70. Defendant's actions constitute willful intentional discrimination against Plaintiff on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

71. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

72. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of

BrighterImageLab.com under N.Y. Exec. Law § 296(2) *et seq*. and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

73. The actions of Defendant were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

74. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) *et seq*. for each and every offense.

75. Plaintiff is also entitled to reasonable attorneys' fees and costs.

76. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq*.))

77. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 of this Complaint as though set forth at length herein.

78. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

79. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

80. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or his civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

81. BrighterImageLab.com is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

82. Defendant is subject to New York Civil Rights Law because it owns and operates BrighterImageLab.com. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

83. Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to BrighterImageLab.com, causing BrighterImageLab.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

84. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

85. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each

and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

86. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . ."

87. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

88. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq*. and/or its implementing regulations.

89. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 *et seq*. for each and every offense.

**FOURTH CAUSE OF ACTION**
(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq*.)

90. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 89 of this Complaint as though set forth at length herein.

91. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of

. . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

92. BrighterImageLab.com is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

93. Defendant is subject to City Law because it owns and operates BrighterImageLab.com. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

94. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to BrighterImageLab.com, causing BrighterImageLab.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq*.] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8-107(15)(a).

95. Defendant's actions constitute willful intentional discrimination against Plaintiff on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

96. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

97. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of BrighterImageLab.com under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

98. The actions of Defendant were and are in violation of City law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

99. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

100. Plaintiff is also entitled to reasonable attorneys' fees and costs.

101. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
(Declaratory Relief)

102. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 101 of this Complaint as though set forth at length herein.

103. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that

BrighterImageLab.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of BrighterImageLab.com, which MSC owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*. prohibiting discrimination against the blind.

104. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, BrighterImageLab.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that BrighterImageLab.com is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, BrighterImageLab.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

d) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights under New York State Human Rights Law and City Law;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
October 8, 2026

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

By:*/s/Dan Shaked*_________
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
e-mail: ShakedLawGroup@Gmail.com